**IN THE COURT OF APPEALS OF IOWA**

No. 21-1272
Filed February 16, 2022

**IN THE INTEREST OF C.K.,**
**Minor Child,**

**C.K., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.


A mother appeals the termination of her parental rights to a child. **AFFIRMED.**



Robin L. Himes, Cedar Rapids, for appellant mother.

Thomas J. Miller, Attorney General and Mary A. Triick, Assistant Attorney General for appellee, State.

Robert Davison, Cedar Rapids, attorney and guardian ad litem for minor child.



Considered by Bower, C.J., and Vaitheswaran and Ahlers, JJ.

**VAITHESWARAN, Judge.**

A mother appeals the termination of her parental rights to a child born in 2013. She contends (1) the State failed to prove the ground for termination cited by the juvenile court and failed to afford her additional time to reunify; (2) the department of human services failed to make reasonable efforts to facilitate reunification; (3) termination was not in the child's best interests; and (4) the juvenile court should have granted an exception to termination based on the parent-child bond.

## I. *Ground for Termination*

The juvenile court terminated parental rights under Iowa Code section 232.116(1)(f) (2021), which requires proof of several elements, including proof the child cannot be returned to parental custody. The mother does not argue she was able to have the child returned to her custody at the time of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). Instead, she asserts, "It is likely [she] would have been in a position to have the child placed back in her custody within[] the next six months." Her argument is essentially a concession that the State proved the ground for termination. Nonetheless, we will address the evidence supporting the ground.

The mother lived with a man who was not the child's father.[1] The man drove the child to a convenience store. Police arrested him there on suspicion that he was under the influence of methamphetamine. They learned the child's mother also used methamphetamine.

---

[1] The child's father died before the inception of these proceedings.

The juvenile court ordered the child removed from the mother's custody. The mother stipulated to the child's adjudication as a child in need of assistance. The juvenile court transferred custody of the child to the department for placement in foster care.

The mother tested positive for methamphetamine after the petition was filed, and she did little to address her addiction thereafter. The department case manager testified: "[I]n the beginning of the case she had missed thirty-three consecutive tests. She has had a total of sixty-five offered tests . . . . She has had forty-two no shows, one refusal, and they have collected twenty-two, which calculates to six UAs and eight patches, since patches are counted twice." Although the case manager acknowledged there were "quite a few negative" urinalysis tests, she noted that the mother tested positive for methamphetamine in each of the four months preceding the termination hearing and she tested positive for cocaine in the month of the termination hearing. The mother was unsuccessfully discharged from two intensive outpatient drug treatment facilities.

In addition to the mother's drug use, the department cited the mother's ongoing relationship with a man who had a history of assaulting her—conduct that "resulted in founded child abuse reports." Approximately two weeks before the termination hearing, the man violently attacked the mother. The police officer who responded to her 911 call reported that the mother "had blood on the left side of her face near her hairline" and "her left eye was black and blue and completely swollen shut." The man was arrested, and a no-contact order was issued. A service provider testified "[t]he mother dropped the no-contact order" a day before the termination hearing. The case manager found the mother's action "very

concerning." She testified the child felt scared the man would "hurt her mother as well as hurt her." She recommended against returning the child to the mother's custody.

On our de novo review, we conclude the State proved the child could not be returned to the mother's custody. We further agree with the professionals who testified that additional time was unlikely to increase the likelihood of reunification. As the juvenile court stated:

> [The mother] has not adequately addressed a single issue that brought her and her family before the Court. [The child] should not have to wait in this limbo until some distant point in the future that [the mother] *might* be able to provide the stable, clean, and sober household that [the child] needs for her long-term nurturing and growth, and her physical, mental and emotional well-being.

## II.    *Reasonable Efforts*

The department has an obligation to make reasonable reunification efforts. *See In re C.B.*, 600 N.W.2d 489, 493 (Iowa 2000). The mother contends the department violated its mandate when it denied her request for drug testing by urinalysis "every other day . . . in order to determine whether her positive patches have been false positives." Even if we were to accept her contention that the patches were less accurate than the urine tests, the mother was given a urine test in the month of the termination hearing and it revealed cocaine metabolites in her system. Additionally, the mother's spotty participation in the testing that was afforded raises doubts about whether she would have followed through with even more tests. Notably, the department provided a number of services aimed at reunifying mother and child, including weekly visits and substance-abuse and

mental-health evaluations.  On this record, we are not persuaded the department's failure to require additional tests violated its reasonable-efforts obligation.

### III.    Best Interests

The mother next contends termination was not in the child's best interests. *See* Iowa Code § 232.116(2).  On our de novo review, we disagree.  The mother used illicit drugs; maintained her relationship with an abusive man; and, according to the child, left her alone at home and in hot cars and failed to feed her appropriately.  There is no question the child's safety would have been compromised in the mother's home.

### IV.    Exception to Termination

The mother invokes an exception to termination based on the parent-child bond.  *See id.* § 232.116(3)(c).  The department conceded the child was bonded to the mother but stated any harm in severing the bond "could be addressed through therapy."  The service provider who supervised visits similarly recommended termination of parental rights notwithstanding the child's "strong relationship with her mom."  And the guardian ad litem stated, "I know her mother loves her and she loves her mom, but it's just not a safe environment, it's not going to be a safe environment."  We conclude the juvenile court appropriately denied this exception to termination.

We affirm the termination of the mother's parental rights to the child.

**AFFIRMED.**